## JEEMS GRAVES V. THE STATE.

No. 1576. Decided February 28, 1912.

**1.—Burglary—Evidence—Bill of Exceptions.**

Grounds of objection to testimony not verified can not be treated as a statement of the facts, and besides, the bill of exceptions is too indefinite to be considered.

**2.—Same—Surprise—Witness—Practice on Appeal.**

Where there was no attempt by defendant to withdraw his announcement

from the jury and continue or postpone the case, when the alleged surprise concerning the testimony of a witness during the trial was discovered, there was no error; and this was not a cause for new trial.

### 3.—Same—Surprise—Motion for New Trial.

Surprise of a party is not available on motion for new trial where the surprise was based on the fact that he was disappointed in the testimony of a witness whom he had been informed would testify favorably. Following Yanez v. State, 20 Texas, 656.

### 4.—Same—Newly Discovered Evidence—Impeaching Testimony.

Where, upon appeal from a conviction of burglary, the record showed that the appellant could have been apprised of the absent testimony, and the same was only of an impeaching character, there was no error.

Appeal from the District Court of Brazos. Tried below before the Hon. J. C. Scott.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of burglary, his punishment being assessed at two years confinement in the penitentiary.

1. A bill of exceptions recites that the State introduced the witness Nix Wilcox and proved by him "that all the negroes in the Brazos bottom gambled." The testimony was objected to on the ground that if the evidence was true it was irrelevant and inadmissible, because the same was a misdemeanor and leveled at parties in no way connected with this offense, and committed in a county of which this court has no jurisdiction, and did not tend to connect the defendant with the crime, to wit, a misdemeanor, gambling; and that if the defendant participated in said game and had violated the law prohibiting gambling, that same would not make him guilty of moral turpitude, and that the said act of gambling did not in any way connect the defendant with the crime for which he was being tried. The bill is too indefinite to be considered. Just how that expression was drawn out or in what connection it was introduced from the witness is not stated. The grounds of objection can not be treated as a statement of the facts. They are but grounds of objection and not verified as being true in fact. This bill, therefore, is too indefinite to present any question for revision.

2. It is contended that the judgment should be reversed because appellant's counsel was misled by one of the witnesses who was used by the State. Appellant's contention is that this witness misled him as to what his testimony would be. He was summoned on behalf of the defendant, who expected to prove by him that he was present and

saw the defendant buy the goods from Dan Patch; and he further expected the witness to swear that he slept with defendant the night of the burglary. Appellant's counsel stated that he had talked with the witness before he was put under the rule, and had been informed by witness that he would testify to those facts, and under those circumstances he announced ready for trial, relying upon the evidence of the witness to acquit the defendant. He further testified that from some questions asked by the district attorney he suspected the witness and thereupon immediately went into the room where the witness was, and witness refused to tell him what his testimony would be. This was discovered during the trial. While the witness was testifying appellant's counsel asked him questions in regard to this matter. There was a denial by the witness that he had made the statements or misled counsel. Counsel took the stand and testified directly contradicting the witness' evidence in regard to what occurred between them. There was no attempt to withdraw announcement from the jury and continue the case. It has been held in many decisions in this State that surprise at the testimony of a witness is not cause for a new trial. The proper remedy, under the statute, in such case is application for postponement or continuance. Article 605, White's Ann. Code of Criminal Procedure; Higginbotham v. State, 3 Texas Crim. App., 447; Webb v. State, 9 Texas Crim. App., 490; Burton v. State, 9 Texas Crim. App., 605; Wakger v. State, 7 Texas Crim. App., 245; Childs v. State, 10 Texas Crim. App., 183; Cunningham v. State, 20 Texas Crim. App., 162; Bryant v. State, 35 Texas Crim. Rep., 394.

It has again been held that the alleged surprise of a party is not available on motion for new trial where the surprise was based on the fact that he was disappointed in the testimony of a witness whom he had been informed would testify favorably. Yanez v. State, 20 Texas, 656. Article 605 White's Ann. Code Criminal Procedure provides that a continuance may be granted on the application of the defendant after the trial has commenced when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial commenced, which no reasonable diligence could have anticipated, he has been so taken by surprise that a fair trial could not be had, the trial may be postponed to a subsequent day of the term. It has also been held a surprise which led to an unfair trial would justify a continuance of postponement, although the parties had both announced and gone into the trial. Where surprised at the testimony of a witness, the party must move to withdraw his announcement and ask for a postponement or continuance so he can meet the testimony. He can not proceed with the trial and urge the matter on motion for new trial. Bryant v. State, 35 Texas Crim. Rep., 394; Caldwell v. State, 28 Texas Crim. App., 566. These authorities are sufficient to show the established rule in this State. There was no error in this ruling of the court.

3. Another ground of the motion for new trial is based upon al-

leged newly discovered evidence of the witness Annie Davis as shown by her affidavit attached to the motion. The allegation in the motion is in this language: "The defendant now shows to the court, that new testimony material to the defendant has been discovered since the trial of this cause, which shows why said witness did so treachously and wickedly deceive both him and his attorney, and did so wickedly and falsely testify in said court, and that said evidence has been discovered since the trial of this cause; that it is shown by the affidavit of the said Annie Davis, which is hereto attached to this application and made a part of same." This is all of the allegation with reference to the facts in regard to its being newly discovered. Annie Davis was a witness on the trial and testified for appellant, and her evidence was to the effect that she was cooking for the defendant and the witness Grey, whom appellant alleges acted to treacherously with him, as well as several other negroes. They all slept at her house, and that about two weeks before defendant was arrested she saw him buy some shoes and rings from Dan Patch. This occurred early in the morning. That she knew the night Mr. Royder's store was said to have been burglarized, and that appellant slept at her house in Burleson County four or five miles from Royder's store and went to bed that night about 10 o'clock; that he slept at her house every night during the week the store was broken into in Brazos County as well as before and during the week the store was burglarized, and that all this time he did not go anywhere at night. Her affidavit attached to the motion for new trial is as follows: "That on the day of the trial of Jeems Graves in the District Court of Brazos County, for burglary, that Ulyses Grey told her unless she would agree to marry him as soon as he could get a divorce from his wife, that he was going in court and swear that he, Jeems Graves, and Dan Patch stole the goods and convict him, that she told him he would swear a lie, he said he would swear his soul and Jeems' soul in to hell before he would give her up, and if Jeems came clear he would have to give her up." This would be impeaching testimony if introduced. Besides, it seems to be fairly deducible from her testimony and her relation to appellant, if her affidavit is true, that appellant would and could have been apprised of her testimony. This is but a deduction, however, from her statement of the matter occurring between herself and Ulyses Grey in connection with the fact that her supposed intimacy with the appellant and consequent friendship for him. In any event the testimony would be but impeaching which has not been recognized as a reason for granting new trials as being newly discovered evidence. The evidence we think is sufficient to sustain the verdict of the jury.

The judgment is affirmed.

*Affirmed.*